1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7    BELUCA VENTURES LLC, et al.,              Case No.  21-cv-06992-WHO
8                      Plaintiffs,
                                               **ORDER GRANTING MOTION FOR**
9            v.                                **JUDGMENT ON THE PLEADINGS**

10   EINRIDE AKTIEBOLAG, et al.,               Re: Dkt. No. 41
11                     Defendants.
12
13                          **INTRODUCTION**
14          Plaintiffs Beluca Ventures LLC and Christian Lagerling (collectively "Beluca") have sued
15   defendants Einride Aktiebolag and Einride US Inc. (collectively "Einride") and Does 1–10 for
16   breach of contract and various non-contract claims.  Einride seeks judgment on the pleadings for
17   all of the quasi-contract claims against Einride Aktiebolag ("Einride AB") and all claims against
18   Einride US Inc. ("Einride US").  I agree with Einride that Beluca has not pleaded facts showing
19   that the alleged oral agreement may be unenforceable and thus cannot bring quasi-contract claims
20   in the alternative.  Nor has Beluca pleaded facts to support its conversion claim.  Finally, Beluca
21   has not plausibly alleged any claims against Einride US, which Beluca acknowledges did not exist
22   at the time of the alleged agreement.  Accordingly, Beluca's claims for unjust enrichment,
23   quantum meruit, promissory estoppel, and conversion against Einride AB are **DISMISSED**
24   **WITH LEAVE TO AMEND**.  All claims against Einride US are **DISMISSED**.
25                       **FACTUAL BACKGROUND**
26          Beluca Ventures LLC is a California technology consulting and development limited
27   liability company that provides expert technology, financial, and operating services to companies
28   in a range of industries.  Complaint ("Compl.") [Dkt. 1–1] ¶ 18.  Christian Lagerling is Beluca

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   Ventures LLC's founder and chief executive officer.  *Id.* ¶ 11.  He is also currently its single

2   member.  *Id.*  Einride AB is an international private company in the business of electronic and

3   autonomous transportation and cargo transportation, with offices in Stockholm and Palo Alto,

4   California.  *Id.* ¶ 20.  Einride US, which is a subsidiary of Einride AB, was formed in February

5   2021.  *Id.* ¶ 13.

6       According to the Complaint, in the fall of 2020 Einride[1] needed "a significant infusion of

7   additional funds to continue its business and spur additional growth."  *Id.* ¶ 22.  It initially decided

8   to seek funding from European-based private family office investors with whom Einride's

9   chairman had previously worked.  *Id.* ¶ 23.  After "months of failure" where it failed to secure

10  funding from any European offices, "Einride was facing an existential need for new funding and

11  burning through its remaining runway."  *Id.* ¶ 25.

12      Against this backdrop of rapidly dwindling funds, Einride's founder, CEO, and largest

13  investor Robert Falck called Christian Lagerling on December 15, 2020, while Lagerling was in

14  Tiburon.  *Id.* ¶ 27.  During the phone conversation, Falck told Lagerling that they needed to raise

15  at least 50 million euros "as soon as possible, but certainly within the next five months," and that

16  they "would like to raise much more for the Series B round."  *Id.* ¶ 28.  As part of the phone

17  conversation, Falck and Lagerling allegedly negotiated a new agreement for Beluca to provide

18  fundraising leadership and assistance for the Series B round.  *Id.* ¶ 27.  The terms of this alleged

19  agreement were "significantly better" for Einride than industry norms: Beluca would receive 2.5%

20  of the funds raised from a new lead investor; 1% of the funds raised from other new investors; an

21  advance retainer of $10,000 a month; and would not take payment for additional funds raised from

22  existing Einride investors.  *Id.* ¶ 29.

23      Following this phone conversation, Beluca led the Series B fundraising efforts for

24  Einride.  *Id.* ¶ 30.  As part of this process, Beluca and Lagerling worked closely with Einride,

25  including "nearly daily communication" with Einride's CEO and CFO regarding fundraising

26  progress and strategy.  *Id.*

27

28  _____

[1] As with many of its allegations, the Complaint does not specify whether this is Einride AB, which it must be in this instance given the timing, or both Einride entities collectively.  *See* Compl. ¶ 22.

Einride raised $110 million in its Series B financing round that officially closed in May 2021. *Id*. ¶¶ 6, 31. On May 6, 2021, Lagerling sent a rough calculation of Beluca's earned compensation pursuant to the alleged December 2020 oral agreement to Einride via text message. *Id*. ¶ 8. Einride's CEO allegedly "ratified this calculation according to the agreement and affirmatively confirmed via written response and indicated that Beluca should send an invoice reflecting those amounts." *Id*. ¶ 8. Yet Einride refused to pay. *Id*. ¶ 9.

To date, Einride has not paid Beluca for its work pursuant to the alleged oral agreement from December 2020. *Id*. ¶ 35. According to Beluca, Einride owes 844,862 euros pursuant to the agreement. *Id*. ¶ 37. Beluca asserts that Einride has been "unjustly enriched" not only by that amount but also by the "roughly $4.5 million to $5.5 million in additional compensation Einride would have had to pay for the fundraising efforts that led to its wildly successful $110 million Series B financing had it hired someone else at industry standard rates to raise funds." *Id*.

## PROCEDURAL BACKGROUND

On July 9, 2021, Beluca filed the Complaint against Einride AB, Einride US, and Does 1–10 in the California Superior Court for Marin County bringing six causes of action: breach of contract, breach of the covenant of good faith and fair dealing, conversion, unjust enrichment, quantum meruit, and promissory estoppel. [Dkt. 1-1]. On September 9, 2021, Einride removed on the basis of diversity jurisdiction. [Dkt. 1] ¶¶ 17–25. On September 16, 2021, it moved to compel arbitration, which I denied on November 1, 2021. [Dkts. 17, 27]. On November 15, 2021, it filed its answer, affirmative defenses, and counterclaims. *See* Answer and Counterclaims [Dkt. 32]. As part of its counterclaims, Einride sought a declaratory judgment that the alleged December 15, 2020 oral agreement claimed between Beluca and Lagerling was void and unenforceable because: (1) Einride AB's "Lead Investors did not provide prior written approval of the alleged December 15, 2020 oral agreement," and (2) "Einride AB's CEO is not authorized to enter into major agreements without the approval of the board." *Id*. ¶¶ 25, 33. Pending now is Einride's motion for judgment on the pleadings. Motion for Judgment on the Pleadings ("MJOP") [Dkt. 41].

1

**LEGAL STANDARD**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) utilizes the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Under both provisions, the court must accept the facts alleged in the complaint as true and determine whether they entitle the plaintiff to a legal remedy. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). Either motion may be granted only when it is clear that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citations omitted). Dismissal may be based on the absence of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pleaded facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

If the court dismisses the complaint, it will generally grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

United States District Court
Northern District of California

4

**DISCUSSION**

Einride articulates four arguments in support of its motion for judgment on the pleadings. First, it argues that Beluca cannot simultaneously allege a breach of contract and quasi-contract claims. MJOP at 4. As a result, Einride asserts that it is entitled to judgment as a matter of law on all of the quasi-contract claims. *Id.* Second, it asserts that the unjust enrichment claim is separately barred because unjust enrichment is not a cause of action in California. *Id.* at 6. Third, it contends that the conversion claim is duplicative of the breach of contract claim and fails as a matter of law. *Id.* at 6–7. Finally, it maintains that all of Beluca's claims against Einride US must be dismissed because Einride US did not exist at the time that the alleged oral agreement was formed on December 15, 2020. *Id.* at 7–10. I address each argument in turn below.

**I.    QUASI-CONTRACT CLAIMS**

Einride argues that plaintiffs who sue based on the existence of a contract cannot simultaneously state quasi-contract claims, which require the absence of a valid, enforceable contract. MJOP at 1. As a result, Einride argues that Beluca's quasi-contract claims for unjust enrichment, quantum meruit, and promissory estoppel must be dismissed. *Id.* In response, Beluca asserts that it pleaded its non-contractual claims "in the alternative" and that it has the legal right to do so. Opp. at 6.

Beluca is correct that, at the pleading stage, it may alternately allege both a breach of contract claim and a quasi-contract claim—so long as Beluca pleads facts suggesting that the contract may be unenforceable or invalid. Rule 8(d) of the Federal Rules of Civil Procedure expressly permits parties to raise alternative and even inconsistent claims. Fed. R. Civ. P. 8(d); *see Molsbergen v. United States*, 757 F.2d 1016, 1018–19 (9th Cir. 1985) ("[T]he Federal Rules of Civil Procedure . . . explicitly authorize litigants to present alternative and inconsistent pleadings."). But even though Rule 8 permits inconsistent claims at the pleading stage, it "does not allow a plaintiff invoking state law to [state] an unjust enrichment claim while also alleging an express contract." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 133 (N.D. Cal. 2020) (quoting *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018)). "[A] plaintiff may not plead the existence of an enforceable contract

United States District Court
Northern District of California

1    and maintain a quasi-contract claim at the same time, unless the plaintiff has pled facts suggesting

2    that the contract may be unenforceable or invalid." *Jacobs v. Sustainability Partners LLC*, No.

3    20-cv-01981-PJH, 2020 WL 5593200, at *17 (N.D. Cal. Sept. 18, 2020) (citation omitted); *cf.*

4    *Rowland v. JPMorgan Chase Bank, N.A.*, No. 14-cv-00036-LB, 2014 WL 992005, at *7 (N.D.

5    Cal. Mar. 12, 2014) ("The Federal Rules of Civil Procedure and the applicable case law uniformly

6    permit promissory estoppel and breach of contract claims to be pleaded in the alternative where

7    there may be a dispute about the terms or validity of the alleged contract.").

8        To be clear, Beluca may properly bring both breach of contract and quasi-contract claims

9    at this stage of litigation. But to do so, Beluca must plead facts suggesting that the supposed

10   contract between it and Einride may be unenforceable or void. *Jacobs*, 2020 WL 5593200, at *17.

11   Beluca has not pleaded such facts. *See, e.g.*, Compl. ¶¶ 29, 33–34 (characterizing the December

12   15, 2020 oral agreement as an enforceable contract).

13        It appears, however, that Beluca may be able to make this showing. In the Answer and

14   Counterclaims, for instance, Einride asserted that the alleged contract was "void and

15   unenforceable" because: (1) Einride AB's "Lead Investors did not provide prior written approval

16   of the alleged December 15, 2020 oral agreement," and (2) "Einride AB's CEO is not authorized

17   to enter into major agreements without the approval of the board." Answer and Counterclaims

18   ¶¶ 25, 33. Those facts would support Beluca bringing both legal theories.

19        As a result, I will dismiss the quasi-contract claims with leave to amend. Beluca may

20   assert its quasi-contract claims in the alternative if it pleads facts suggesting that the alleged oral

21   contract may be unenforceable.

22   **II.     UNJUST ENRICHMENT CLAIM**

23        Next, Einride argues that the unjust enrichment claim should be dismissed because unjust

24   enrichment is not an independent cause of action in California. MJOP at 6. It cites my opinion in

25   *World Surveillance Group*, where I dismissed a claim for unjust enrichment under the theory that

26   "unjust enrichment is not a cause of action under California law." *World Surveillance Grp. Inc. v.*

27   *La Jolla Cove Invs., Inc.*, No. 13-cv-03455-WHO, 2014 WL 1411249, at *2 (N.D. Cal. Apr. 11,

28   2014); *see also* MJOP at 6.

As Beluca indicates, the Ninth Circuit subsequently explained that a court may "construe" a claim for unjust enrichment as "a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). And in the wake of *Astiana*, I have repeatedly found that unjust enrichment claims could be cognizable as quasi-contract claims. *See, e.g.*, *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2015 WL 4104868, at *3 (N.D. Cal. July 7, 2015) (granting leave to add unjust enrichment claim in light of *Astiana*); *Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 WL 4269787, at *9 (N.D. Cal. Aug. 15, 2016) (refusing to dismiss unjust enrichment claim in light of *Astiana*).

In short, governing Ninth Circuit case law makes clear that an unjust enrichment claim brought under California law may be construed as a quasi-contract claim seeking restitution. I have already dismissed Beluca's quasi-contract claims—including the unjust enrichment claim— because Beluca has not alleged facts showing that the alleged oral contract may be unenforceable. Should Beluca wish to assert an unjust enrichment claim as a quasi-contract claim seeking restitution in its amended complaint, it is granted leave to do so.

## III.   CONVERSION CLAIM

Einride argues that the conversion claim should be dismissed because it is impermissibly duplicative of the breach-of-contract claim, and because "the simple failure to pay money owed does not constitute conversion." MJOP at 6–7 (quoting *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011)). In response, Beluca contends that the complaint properly pleads a claim for conversion, and that it has alleged a "contractual arrangement that gave rise to an equitable lien." Opp. at 10.

"Conversion is the wrongful exercise of dominion over the property of another." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005) (citation omitted). To state a claim for conversion, Beluca must allege the following elements: (1) ownership or right to possession of the property; (2) wrongful disposition of the property right; and (3) damages. *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). A plaintiff need not have legal ownership or absolute ownership of the property. *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329

7

1   (1988) (citation omitted).  The plaintiff need only allege that he or she was "entitled to immediate

2   possession" of the property at the time of conversion.  *Bastanchury v. Times–Mirror Co.*, 68 Cal.

3   App. 2d 217, 236 (1945).  Money can be the subject of an action for conversion if a specific sum

4   capable of identification is involved.  *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452

5   (1997).

6          "A plaintiff may not ordinarily recover for the tort of conversion for the breach of duties

7   that merely restate contractual obligations."  *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058

8   (N.D. Cal. 2021) (citation and quotation marks omitted).  Said differently, "a mere contractual

9   right of payment, without more, will not suffice" to state a claim for conversion.  *Farmers*, 53 Cal.

10  App. 4th at 452.  As the California Supreme Court recently explained, "the simple failure to pay

11  money owed does not constitute conversion . . . . Were it otherwise, the tort of conversion would

12  swallow the significant category of contract claims that are based on the failure to satisfy mere

13  contractual right[s] of payment."  *Voris v. Lampert*, 7 Cal. 5th 1141, 1151–52 (2019) (citations

14  omitted).

15         "An equitable lien is a right to subject property not in the possession of the lienor to the

16  payment of a debt as a charge against that property."  *Farmers*, 53 Cal. App. 4th at 453.  "It may

17  arise from a contract which reveals an intent to charge particular property with a debt or out of

18  general considerations of right and justice as applied to the relations of the parties and the

19  circumstances of their dealings."  *Id.* (citation and quotation omitted).  "[A] lien constitutes a

20  property interest which may be converted."  *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999)

21  (internal citation omitted).

22         I agree with Einride that Beluca's allegations supporting its claim for conversion mirror its

23  allegations supporting the breach of contract claim, and appear largely foreclosed by *Nguyen* and

24  the reasoning in *Voris*.  *Nguyen* explained that a breach of duties that merely restates contractual

25  obligations does not normally give rise to conversion.  *Nguyen*, 529 F. Supp. 3d at 1058.  *Voris*

26  established that a failure to pay wages is not cognizable as a conversion claim.  *Voris*, 7 Cal. 5th at

27  1144.  The plaintiff in *Voris* had reasoned that "by failing to pay the wages, the companies

28  converted his personal property to their own use," thus giving rise to a claim for conversion.  *Id.* at

1144–45.  Importantly, in finding that Voris's conversion claim was not cognizable, the California

Supreme Court compared wage and breach of contract claims, noting that "a claim for unpaid

wages resembles other actions for a particular amount of money owed in exchange for contractual

performance—a type of claim that has long been understood to sound in contract, rather than as

the tort of conversion." *Id.* at 1156.  While Beluca is correct that *Voris* involved a claim for

unpaid wages and not a breach of contract, *Voris*'s reasoning curbs Beluca's claim.

Moreover, "California cases permitting an action for conversion of money typically

involve those who have misappropriated, commingled, or misapplied specific funds held for the

benefit of others." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro,

LLP*, 150 Cal. App. 4th 384, 396 (2007).  *See, e.g.*, *Haigler v. Donnelly*, 18 Cal.2d 674, 681 (1941)

(affirming judgment awarded for conversion claim brought against plaintiffs' real estate

broker); *Fischer v. Machado*, 50 Cal. App. 4th 1069, 1072–1074 (1996) (affirming judgment

awarded for conversion claim brought against sales agent for proceeds of the sale of farm

products); *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975) (recognizing conversion claim

brought by plaintiff's attorney for $6,750 fee from proceeds of settlement subject to lien); *cf. Kim*,

201 Cal. App. 4th at 284 (describing conversion claims as arising where "a trustee or agent

misappropriates the money entrusted to him").  Unlike a typical case involving conversion of

money, this case does not involve an entity (such as an attorney or real estate agent) holding funds

for the benefit of the client.  In fact, there is no indication that Einride was holding funds for the

benefit of Beluca.

Nor has Beluca has pleaded facts that would support its theory of an equitable lien.

*Kennedy Funding*, which is Beluca's sole cited case regarding equitable liens, is distinguishable.

*Kennedy Funding* began with the financing of a troubled real estate development project that

resulted in a bankruptcy proceeding and, eventually, a settlement agreement.  *Kennedy Funding,

Inc. v. Chapman*, No. 09-cv-01957-RS, 2010 WL 2528729, at *2 (N.D. Cal. June 18, 2010).  The

settlement agreement, which was approved by the bankruptcy court, "earmarked no less than

$1,000,000" for Kennedy Funding.  *Id.*  But instead of giving the funds to Kennedy Funding, the

money was transferred to the guarantor, who then refused to return it.  *Id.* at *3.  Kennedy Funding

9

filed suit, alleging that (among other things) the guarantor was liable for conversion. *Id.* at *1. In its complaint against the guarantor, Kennedy Funding explicitly alleged that it possessed an equitable lien on the portion of the settlement proceeds that it was contractually owed. *Id.* at *8. At the motion to dismiss stage, *Kennedy Funding* held that the plaintiff had adequately stated a claim for conversion: "Because the existence of an equitable lien pursuant to a contract is a factual determination, and because Plaintiff has alleged the contractual arrangements that gave rise to the equitable lien in this case, Plaintiff has sufficiently alleged a possessory interest in the Malpractice Judgment Proceeds." *Id.*

Unlike *Kennedy Funding*, Beluca is not seeking to recover "earmarked" funds pursuant to a judicially-approved agreement. *Id.* * 2. Nor did Beluca plead the existence of an equitable lien in the complaint. *See, e.g.*, Compl. ¶¶ 51–54 (no reference to an equitable lien in the conversion claim section). *Kennedy Funding* is not analogous, and Beluca has not pointed to any other cases in support of its theory that it has adequately alleged an equitable lien.

I find that Beluca has not plausibly stated a claim for conversion. As a result, I **GRANT** Einride's motion for judgment on this claim, but will give Beluca leave to amend.

## IV.    EINRIDE US

Lastly, Einride argues that all claims against Einride US should be dismissed because "Einride US Inc. did not exist at the time of the alleged oral agreement and Plaintiffs can make no allegations against it." MJOP at 7. The Complaint itself alleges that Einride US was formed "in the midst of Beluca's and Einride's fundraising in February 2021," months after the alleged oral agreement in December 15, 2020. Compl. ¶¶ 5, 13. I agree with Einride that Beluca has not shown that any of its claims lie against Einride US.

As an initial matter, Beluca has painted its allegations with a broad brush. Almost all of the allegations in the Complaint are made against "Einride," which is defined to include Einride AB, Einride US, and Does 1–10. Compl. at 1. As a result, the Complaint improperly engages in undifferentiated pleading that fails to make clear what allegations are being made against Einride AB versus Einride US. The Ninth Circuit has instructed that complaints should contain "clear and concise averments stating which defendants are liable to plaintiffs for which wrongs []." *McHenry*

1    *v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996); *see also In re Sagent Tech., Inc. Derivative Litig.*,

2    278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because

3    plaintiffs do not indicate which individual defendant or defendants were responsible for which

4    alleged wrongful act."); *Beatport LLC v. SoundCloud Ltd*, No. 19-cv-847, 2020 WL 3977602, at

5    *5 (C.D. Cal. July 13, 2020) ("It is a basic pleading defect for a complaint to 'lump' parties

6    together and to fail to distinguish between named defendants.") (citation omitted).  Beluca has

7    failed to plead its allegations with reasonable specificity.

8           Nor has Beluca plausibly alleged that Einride US is liable under an alter ego theory.  In its

9    opposition brief, Beluca asserts that Einride US is a proper defendant because "Defendants

10   themselves treat Einride AB and Einride US Inc. as a single entity and Robert Falck as the CEO of

11   both."  Opp. at 11.  Beluca then cites a press release that refers to "Einride" and includes the U.S.

12   operations as part of "Einride."  *Id.*  To the extent that this argument seeks to hold Einride US

13   accountable for Einride AB's alleged contractual violations under an alter ego theory, it is plainly

14   deficient.  To survive a motion to dismiss, a plaintiff asserting application of the alter ego doctrine

15   must "allege specifically both the elements of alter ego liability, as well as facts supporting

16   each."  *MH Pillars Ltd. v. Realini*, No. 15-cv-1383-PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar.

17   8, 2017) (citation omitted).  The plaintiff must show that "(1) there is such unity of interest and

18   ownership that the separate personalities or the two entities no longer exists, and (2) failure to

19   disregard their separate identities would result in fraud or injustice."  *Williams v. Yamaha Motor

20   Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing omitted).  The Complaint has not even

21   attempted to do so.

22          Beluca also claims that Einride US "is the beneficiary of funds from the Series B financing

23   and thus, directly benefited from the services Plaintiffs rendered."  Opp. at 12.  According to

24   Beluca, this makes Einride US "a proper defendant with regard to the quantum meruit, unjust

25   enrichment/restitution, promissory estoppel and conversion claims."  *Id.*  To the extent that this

26   argument seeks to hold Einride US *directly* liable (as opposed to through an alter ego theory), it

27   fares no better.  I do not see how a company that concededly did not even exist at the time of the

28   alleged contract was formed could be directly liable for quasi-contract claims, and Beluca does not

11

cite any cases to support its novel theory.  Einride, on the other hand, persuasively argues in its motion that: (1) the breach of contract claims fail because no well-pleaded facts show the existence of any contract with Einride US; (2) the conversion claim fails because no well-pleaded facts show that Einride US ever dispossessed Beluca of any of its alleged property; (3) the promissory estoppel claim fails because Beluca does not allege that Einride US had made any promise to it; (4) the quantum meruit claim fails because Beluca's allegations do not establish that Einride US made an express or implied request for Beluca's services; and (5) the unjust enrichment claim fails because Beluca does not plausibly allege Einride US received a benefit and unjustly retained that benefit at Beluca's expense.  MJOP at 8–9.

Beluca did not plead sufficient allegations that would support holding Einride US Inc. liable under an alter ego theory, and it is not plausible that an entity not in existence at the time of an alleged contract could be directly liable for contract and quasi-contract claims.  Should Beluca learn facts in discovery that support imposing liability against Einride US, it may move to amend at that time.  I **DISMISS** the claims against Einride US.

### CONCLUSION

For the foregoing reasons, I **GRANT** Einride's motion for judgment on the pleadings and **DISMISS** Beluca's claims for conversion (count III), unjust enrichment (count IV), quantum meruit (count V), and promissory estoppel (count VI), with leave to amend.  I dismiss all claims against Einride US.  Beluca shall amend its complaint within 20 days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: August 19, 2022

William H. Orrick
United States District Judge