UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELUCA VENTURES LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EINRIDE AKTIEBOLAG,<br><br>　　　　Defendant. | Case No. 21-cv-06992-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CHRISTIAN LAGERLING AND BELUCA VENTURES' MOTION TO DISMISS COUNTS I-V OF THE AMENDED COUNTERCLAIMS AND DENYING ADMINISTRATIVE MOTIONS TO SEAL AS MOOT**<br><br>Re: Dkt. Nos. 81, 82, 88 |

**INTRODUCTION**

Almost eighteen months after Beluca Ventures LLC and Christian Lagerling (collectively "Beluca") filed suit over an alleged oral contract gone wrong, Einride Aketiebolag counterclaimed based on Beluca's alleged misappropriation of Einride's trade secrets. *See* Einride's First Amended Answer and Counterclaims ("FAAC") [Dkt. 85]. Beluca moved to dismiss five claims in the FAAC, arguing that Einride failed to plead the two trade secret claims with sufficient particularity; the breach of implied covenant claim was superfluous; and the California Uniform Trade Secrets Act ("CUTSA") supersedes the breach of contract, breach of implied covenant, and breach of fiduciary duty claims.

Beluca is partly right. The breach of implied covenant claim is superfluous of the breach of contract claim and CUTSA supersedes the breach of fiduciary duty claim; these claims will be **DISMISSED** with leave to amend. The other claims are sufficiently pleaded and will survive.[1]

---

[1] After carefully considering the briefing, I concluded that oral argument was not necessary. *See* Civ. L.R. 7-1(b) ("In the Judge's discretion . . . a motion may be determined without oral argument [.]").

**BACKGROUND**

The FAAC makes the following allegations, which I accept as true for purposes of the motion to dismiss. Einride AB ("Einride") is a Swedish corporation that makes autonomous electric vehicles. *See* Einride's First Amended Answer and Counterclaims ("FAAC") [Dkt. 85] ¶¶ 2, 14–17. Since its founding in 2016, Einride has invested heavily in its business strategies, including by hiring the consulting firm McKinsey & Company to analyze Einride's product-development and business strategies. *Id.* ¶¶ 14, 17, 19.

*The McKinsey Report*

On May 14, 2021, Einride received the McKinsey report, which was titled "Einride Unique Value Proposition." *Id.* ¶ 20. This 84-page report analyzed Einride's market position, potential competitors, and opportunities for growth. *Id.* ¶ 21. Among other things, it discussed other companies who might compete with Einride in certain markets, and suggested ways that Einride could, as a "first mover," increase its chance to compete or pair successfully with those companies. *Id.* The report also mentioned specific features of Einride's technology stack that gave it a competitive advantage. *Id.* ¶ 22. Einride circulated the McKinsey report to all members of Einride's board of directors in advance of a board meeting later that month. *Id.* ¶ 20.

Einride claims that the information that Einride has developed about the market for autonomous electric vehicles, potential competitors, Einride's competitive strengths and weaknesses, and Einride's product-development and business strategies, are Einride's trade secrets. *Id.* ¶ 18. Einride further asserts that "at least some" of Einride's trade secrets are detailed in the McKinsey report. *See* Einride's Opposition ("Opp.") [Dkt. 82] at 2 (citing FAAC ¶¶ 20–22).

*Christian Lagerling and Beluca Ventures's Alleged Misappropriation of Einride's Trade Secrets*

Christian Lagerling is the principal and sole member of Beluca Ventures LLC. *Id.* ¶ 3. He is also a managing partner of Core Finance, which provides fundraising services to companies. *Id.* ¶ 5.

In May 2021, at the time that Einride received the McKinsey report, Lagerling was a member of Einride's board of directors. *Id.* ¶ 23. He received a copy of the McKinsey report as a

2

result of his membership on Einride's board of directors. *Id.* ¶ 24. In June 2021, Einride removed Lagerling from the board of directors. *Id.* ¶ 30.

On September 25, 2021, Lagerling emailed the McKinsey report to his colleagues at Core Finance using his belucaventures.com email address. *Id.* ¶¶ 41–42. In the email, Lagerling wrote: "See attached – strictly confidential – what we did for Einride together with McKinsey this spring, from page ~25 onwards digging into the specific market opportunities." *Id.* ¶ 41. On information and belief, Einride alleges that Lagerling, Beluca Ventures LLC, and Core Finance[2] used Einride's trade secrets (including Einride's strategic plans) to create both a business plan for National Electric Vehicle Sweden ("NEVS"), a competitor of Einride, and a strategy for helping NEVS raise funds of its own. *Id.* ¶¶ 1, 44. At Lagerling's suggestion, NEVS implemented a business strategy that involved "copy[ing] the approach of Einride," as NEVS put it. *Id.* ¶¶ 45–49.

Einride alleges that n addition to sharing Einride's trade secrets, Lagerling and Beluca also shared Einride's "confidential information" with third parties, including Core Finance and NEVS, although Einride does not describe any such confidential information. *Id.* ¶¶ 89–90, 103.

In July of 2021, Beluca filed suit against Einride and its U.S.-based subsidiary, Einride US,[3] based on an alleged oral contract from December 2020 whereby Einride would pay Beluca to lead fundraising efforts for the Series B round. *See* August 19, 2022 Order [Dkt. 48] at 2–3. Almost eighteen months later, Einride counterclaimed based on Beluca's alleged misappropriation of Einride's trade secrets. *See* FAAC ¶¶ 1, 40, 52. In the FAAC, Einride asserts a violation of the Defend Trade Secrets Act ("DTSA") against Lagerling, Beluca, and Core Finance, *see* FAAC ¶¶ 59–72; a violation of California's Uniform Trade Secrets Act ("CUTSA") against Lagerling, Beluca Ventures, and Core Finance, *see id.* ¶¶ 73–82; breach of contract against Lagerling and Beluca Ventures, *see id.* ¶¶ 83–93; breach of the implied covenant of good faith and fair dealing against Lagerling and Beluca Ventures, *see id.* ¶¶ 94–98; breach of fiduciary duty against

---

[2] Although Core Finance is a defendant to the two trade secret claims, Core Finance did not move to dismiss because it was not served until February 10, 2023. *See* Dkt. 90. Based on the allegations in the FAAC, however, it appears that the arguments raised in the briefing and addressed in this Order would likely apply to Core Finance.

[3] All claims against Einride US have been dismissed. *See* August 19, 2022 Order at 10–12.

3

Lagerling, *see id.* ¶¶ 99–105; and three declaratory judgment counts against Lagerling and Beluca Ventures, *see id.* ¶¶ 106–159.

Beluca timely moved to dismiss the first five claims of the FAAC. *See* Motion to Dismiss ("Mot.") [Dkt. 81]. Beluca argued that Einride had not stated a claim for misappropriation of trade secrets under the DTSA or CUTSA because Einride had failed to sufficiently identify any of Einride's trade secrets and because Einride had failed to plausibly allege misappropriation. *Id.* at 5–9. Beluca also argued that the fourth claim—for breach of the implied covenant of good faith and fair dealing—was duplicative of the breach of contract claim, and that CUTSA superseded[4] the third, fourth, and fifth claims. *Id.* at 9–12. Einride responded that its trade secret and misappropriation allegations were sufficiently pleaded, that Beluca forfeited its argument regarding the duplicative breach of covenant claim by making it in a footnote and by including such a claim in its own complaint, and that the contract and quasi-contract claims were not "excused" by CUTSA. *See* Opp. at 4–15.[5]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[4] The parties use the term "preempted." As explained in *Silvaco Data Systems v. Intel Corp.*, "[t]he [California] Supreme Court has criticized the use of 'preempt' to describe the supersession of one state law by another." 184 Cal. App. 4th 210, 232 n.14 (2010) (internal quotations and citations omitted), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). *Silvaco* went on to state that "[f]or present purposes we favor [the term] 'supersede[.]'" *Id.* Where applicable, I follow *Silvaco* and use the term 'supersede.'

[5] Both Einride and Beluca filed portions of its opposition and reply briefs under seal in light of a then-pending motion to seal certain information in the FAAC. *See* Einride's Administrative Motion for Leave to File Under Seal [Dkt. 82] at 1–2; Beluca's Administrative Motion to Seal [Dkt. 88] at 2. Because I ruled that the information in the FAAC did not qualify for sealing, *see* Dkt. 84, these motions to seal are moot and therefore **DENIED**.

4

(citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

The questions that I must answer in this motion are whether Einride sufficiently pleaded two elements of its DTSA and CUTSA claims, whether the implied covenant claim is duplicative of Einride's breach of contract claim, and whether CUTSA supersedes the third through fifth claims. The answers, as set forth below, are generally yes: although not all of the claims are superseded by CUTSA, the trade secret claims are sufficiently pleaded and the implied covenant claim is duplicative.

**I.      EINRIDE SUFFICIENTLY ALLEGED TRADE SECRETS**

Beluca first argues that Einride's claims for misappropriation of trade secrets under the DTSA and CUTSA should be dismissed because Einride fails to identify any purported trade

secret with sufficient particularity. Mot. at 6. I disagree.

"To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citations and internal quotation marks omitted).[6] "[T]he definition of what may be considered a 'trade secret' is broad." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (citation omitted). "[T]he definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.*

"To prove ownership of a trade secret, plaintiffs must identify the trade secrets and carry the burden of showing they exist." *Id.* at 658 (internal quotation marks and citation omitted). Although a plaintiff "need not 'spell out the details of the trade secret,'" *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-cv-01498-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (internal quotation omitted), a plaintiff "should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *InteliClear*, 978 F.3d at 658 (internal quotation marks and citation omitted) (emphasis in original). In other words, a plaintiff must describe the trade secret with sufficient particularity to permit the defendant "to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted). Identifying trade secrets with sufficient particularity is important because defendants need concrete identification to prepare a rebuttal. *InteliClear*, 978 F.3d at 658.

"[A]llegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally *may* qualify as protectable trade

---

[6] Courts analyze claims brought pursuant to the DTSA and CUTSA together because "the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). Likewise, the DTSA and CUTSA "share the same pleading requirements for the identification of trade secrets." *Alta Devices*, 343 F. Supp. 3d at 880–81.

secrets are insufficient to state a claim." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020) (internal quotation marks and quotation omitted) (emphasis in original). After surveying several cases, the Honorable Phyllis Hamilton identified the following allegations as insufficiently specific to allege a trade secret:

- Allegations of "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements." *Vendavo*, 2018 WL 1456697, at *3-4.

- Allegations of "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers." *Space Data Corp.*, 2017 WL 5013363, at *2.

- Allegations of "marketing strategy, product composition, packaging and manufacturing logistics," *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020).

*Cisco*, 462 F. Supp. 3d at 1048.

Importantly, though, such categories of information become sufficiently particularized for purposes of stating a claim where the complaint alleges that these categories of information are contained within specific documents. In *Cisco*, for instance, the plaintiff alleged as trade secrets categories of information that included "business information," "market and strategy data" and "product strategies and other financial data," and the plaintiff identified specific documents that contained the information. *Id.* at 1048–49. *Cisco* rejected the defendant's argument that these categories were insufficiently particularized because the specific documents referenced in the amended complaint "narrowed the scope of information at issue in such categories to particular subjects mentioned in certain documents or communications alleged in the FAC." *Id.* at 1049. Likewise, in *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155 (N.D. Cal. 2020), the plaintiff identified "nine specific documents" containing its trade secrets in its complaint, leaving "little doubt" that "Defendants have been put on adequate notice." *Id.* at 1172; *see also Way.com v. Singh*, No. 18-cv-04819-WHO, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018) (holding

7

that the plaintiff identified its trade secrets with sufficient particularity where it "identified a single document" that contained the trade secrets and listed general categories of trade secrets, including "[t]he process by which [the company] determines how to launch and market certain parking locations").

Beluca contends that Einride does not identify its trade secrets with sufficient particularity because Einride "merely provide[s] a high-level generalization of Einride's purported trade secrets." Mot. at 6. Einride makes the following allegations regarding its trade secrets:[7]

- "Highly-confidential information about the market for autonomous electric vehicles, potential competitors, Einride's competitive strengthens [*sic*] and weaknesses, and Einride's product-development and business strategies constitute trade secrets of Einride." FAAC ¶ 18.

- "As one example of Einride's trade secrets, Einride commissioned an analysis by the consulting company McKinsey & Company of Einride's product-development and business strategies. Einride personnel spent at least several hundred hours working with McKinsey on the analysis, and Einride paid McKinsey a substantial sum for its analysis." *Id.* ¶ 19.

- "This 84-page report engaged in a sophisticated analysis of Einride's market position, potential competitors, and opportunities for growth. Among other things, it discussed other companies who might compete with Einride in certain markets, and suggested ways that Einride could, as a 'first mover,' increase its chance to compete or pair successfully with those companies." *Id.* ¶ 21.

- "The report also discussed the elements of Einride's technology stack that gave it a competitive advantage, mentioning specific features that uniquely position Einride to excel. For example, page 7 of the report contained a section entitled 'What you need to believe in for Einride to sustain its competitive advantage' that detailed these items." *Id.* ¶ 22.

Drawing all reasonable inferences in Einride's favor, I find that the purported trade secrets contained within the McKinsey report—*i.e.*, information regarding Einride's business strategy and technology stack—have been pleaded with sufficient particularity. As indicated above, the basic test is: (1) whether something beyond general knowledge is being claimed and (2) whether there is enough specificity to put the defendant on notice regarding the nature of the trade secret.

---

[7] In its opposition brief, Einride also notes that paragraphs 21 and 22 are the "allegations that describe the misappropriated trade secrets." Opp. at 6–7.

8

*Vendavo*, 2018 WL 1456697, at *4. Although paragraph 18 uses "broad, categorical terms that are merely descriptive of the types of information that generally *may* qualify as protectable trade secrets" and is therefore likely insufficient, *see Cisco*, 462 F. Supp. 3d at 1048, the FAAC does not end there. The trade secrets are sufficiently pleaded because paragraphs 21 and 22 plausibly identify information beyond that of general knowledge and—by specifying that this information is found within the McKinsey report—are sufficiently particularized to put Beluca on notice. But to the extent that Einride contends that Beluca has misappropriated other trade secrets beyond those listed in paragraphs 21 and 22, such allegations lack factual specificity.

Beluca also asserts that the information contained within the McKinsey report is not a trade secret because is "a third party market analysis" which is based on "publicly available" data and is "presumably meant to be shared with Einride's prospective customers." Reply at 5. These arguments do not pass muster.

First, although neither party has provided a copy of the McKinsey report to me, Beluca's own briefing indicates that the report includes *both* publicly available and proprietary information. After identifying various public sources who allegedly contributed to the report, Beluca lists "general market and policy research, expert interview and team analysis" as the final sources used in the McKinsey report. *Id.* Beluca has not provided any authority that suggests that a report that draws upon general market and policy research, expert interviews, and team analysis in addition to publicly available information cannot include trade secrets. *Cf. Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002) (holding that the plaintiff's marketing strategy and plans constitute trade secrets under California law and that market research could be a trade secret if it explores the needs of numerous customers).

Second, there are no facts contained within the FAAC that demonstrate that Einride intended to share the McKinsey report with potential customers. Instead, the FAAC alleges that Einride took various measures to protect the secrecy of its trade secrets, including limiting access for Einride employees to a "need-to-know" basis and requiring third-party consultants to agree to maintain the confidentiality of its trade secrets. *See* FAAC ¶¶ 26–27, 31. To the extent that Beluca contends that Einride did not keep this information secret, this is a contested question of

fact that is not appropriate to resolve at this juncture.

Beluca's motion to dismiss the DTSA and CUTSA claims based on the argument that Einride has insufficiently alleged its "trade secrets" is **DENIED.**

## II. EINRIDE SUFFICIENTLY ALLEGED MISAPPROPRIATION

Second, Beluca argues that Einride does not plausibly allege that Lagerling or Beluca actually misappropriated any trade secret. Again, I disagree.

"The elements of misappropriation under the DTSA are similar to those under the CUTSA." *Space Data Corp.*, 2017 WL 5013363, at *1. To state a claim under the DTSA or CUTSA, Einride must allege that Lagerling and Beluca improperly acquired, disclosed, or used the trade secret. *See* 18 U.S.C. § 1839(5) (defining "misappropriation"); Cal. Civ. Code § 3426.1(b) (same).

According to Beluca, the FAAC fails to allege any specific facts demonstrating that Lagerling or Beluca engaged in any wrongful disclosure or use of any purported trade secret. Mot. at 8–9. Beluca further contends that Einride "hides behind the entirely speculative crutch of 'information and belief' pleading and bases its claim that any Einride purported trade secret was 'used' on nothing more than 'information and belief.'" *Id*. at 9 (citing FAAC ¶ 44).

Beluca is wrong. The FAAC contains several factual assertions which bear on misappropriation:

- "As just one example of Lagerling and Beluca's misappropriation of Einride's trade secrets, on September 25, 2021, Lagerling emailed several of his partners and employees at Core Finance the McKinsey report that contained Einride trade secrets. Lagerling warned his partners at Core Finance about the confidentiality of the presentation and directed them not to share it with anyone else: 'See attached – strictly confidential – what we did for Einride together with McKinsey this spring, from page ~25 onwards digging into the specific market opportunities.'" FAAC ¶ 41.

- "Lagerling emailed the McKinsey report to his partners and employees at Core Finance from his email address at belucaventures.com, and the signature block of Lagerling's email touted Lagerling as the 'Founder & CEO, Beluca Ventures, LLC.'" *Id.* ¶ 42.

- "On information and belief, Lagerling, Beluca, and Core Finance used Einride's trade secrets (including Einride's strategic plans) to create both a business plan for NEVS and a strategy for helping NEVS raise funds of its own." *Id.* ¶ 44.

10

- "Not only did Lagerling share Einride's trade secrets, he suggested to NEVS that it should copy the strategic planning that Einride conducted." *Id.* ¶ 45.

- "For example, in a February 3, 2022 email, NEVS' Senior Director Strategy & Business Development (Daniel Roos) summarized a call with Lagerling, Core Finance, and others from NEVS. Discussing options for revamping NEVS' business, Roos summarized an option titled 'Sango – parcel delivery vehicle and skateboard. The fundamental idea would be to copy the approach of Einride…'" *Id.* ¶ 47.

- "Though Roos suggested two other options for revamping NEVS' business strategy, in an email sent the next day (February 4, 2022), Lagerling pushed NEVS to copy Einride's strategy. Lagerling wrote that this 'Sango' strategy 'ma[de] sense' given NEVS' finances." *Id.* ¶ 48.

These allegations show that Lagerling disclosed the McKinsey report to Core Finance even though he knew it was confidential. Moreover, Einride also alleges that Lagerling (who was both a shareholder and a director at the time that he received the McKinsey report) owed a duty of loyalty and confidentiality to Einride which prohibited Lagerling from disclosing the trade secrets to Core Finance. *Id.* ¶¶ 64, 66, 103. Beluca Ventures was also an Einride shareholder and had agreed to keep Einride's trade secrets confidential. *Id.* ¶ 29. For purposes of a motion to dismiss, these allegations suffice to show that Lagerling and Beluca Ventures misappropriated Einride's trade secrets.[8]

Lastly, Beluca asserts that because NEVS announced its "Sango" autonomous vehicle and technology operating system to the public in July 2020, prior to Einride's receipt of the McKinsey report, it is "misleading" for Einride to assert that Beluca misappropriated Einride's trade secrets. Mot. at 4; Reply at 9. Similarly, Beluca argues that it is "misleading" for Einride to characterize NEVS as a "competitor" because NEVS purportedly provides "completely different" services and

---

[8] Einride also asserts that Lagerling's knowledge of his obligation to maintain the confidentiality of Einride's trade secrets can be imputed to Core Finance because Lagerling was a principal of Core Finance. FAAC ¶¶ 57, 65. Core Finance has not yet responded to the FAAC, but on this record this argument appears to be sound. Lagerling consulted for NEVS while acting as a managing partner of Core Finance. *Id.* ¶ 38. The Ninth Circuit has held that a managing partner's knowledge may be imputed to the corporate entity. *See, e.g.*, *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1037 n.3 (9th Cir. 2016) ("As ESG Capital's managing partner, Burns's knowledge is imputed to ESG Capital.").

1    products from Einride. Reply at 9. These are disputed questions of fact that are not appropriate to

2    address at this stage.

3          Because Einride has sufficiently alleged misappropriation by Lagerling and Beluca,

4    Beluca's motion to dismiss on this ground is **DENIED.**

### III.  THE BREACH OF IMPLIED COVENANT CLAIM IS SUPERFLUOUS

6          Next, Beluca argues (albeit in a footnote) that Einride's fourth cause of action should be

7    dismissed because "it is based on the same facts as the breach of contract claim, seeks the same

8    remedy, and is therefore superfluous and duplicative." Mot. at 12 n.4. Beluca is right.

9          "[A]lthough the California Supreme Court has held that a plaintiff may bring *both* a breach

10   of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, the

11   Supreme Court has made clear that when both causes of action cite the same underlying breach,

12   the implied covenant cause of action will be superfluous with the contract cause of action."

13   *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (emphasis in original)

14   (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000)). *Guz* explained that "where breach

15   of an actual term is alleged, a separate implied covenant claim, based on the same breach, is

16   superfluous." *Guz*, 24 Cal. 4th at 327. In other words, a claim alleging breach of the implied

17   covenant of good faith and fair dealing must be based on a different breach than the breach of

18   contract claim. *Landucci*, 65 F. Supp. 3d at 716.

19         Einride does not dispute that its third and fourth claims for breach of contract and breach of

20   implied covenant are based on the same facts and seek the same remedy. *Compare* FAAC ¶¶

21   83–93 *with id.* ¶¶ 94–98. Instead, Einride cites *Deerpoint* to argue that a party can allege both

22   breach of contract and breach of implied covenant of good faith and fair dealing claims together.

23   Opp. at 14 (citing *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1242 (E.D. Cal.

24   2018)). But *Deerpoint* dismissed the breach of implied covenant claim as "redundant" and

25   "superfluous" because it "does not contain any conduct that is different or separate from the

26   conduct alleged under the [breach of contract] cause of action." *Deerpoint*, 345 F. Supp. 3d at

27   1242–43. *Deerpoint* is of no use to Einride.

28         Einride also points out that Beluca asserted both a breach of contract claim and a breach of

United States District Court
Northern District of California

the implied covenant of good faith and fair dealing claim in the FAC.  Opp. at 14–15 (citing First Amended Complaint [Dkt. 51] ¶¶ 43–54).  But Einride's failure to identify a potentially redundant claim in Beluca's complaint does not preclude Beluca from seeking dismissal of a redundant claim in the FAAC.

The fourth claim for breach of the implied duty of good faith and fair dealing is superfluous and **DISMISSED.**  Although I have doubts that Einride may allege conduct that is not superfluous to the breach of contract claim, it is not clear that amendment would be futile.  Therefore, I will give Einride leave to amend in the event that there is a basis for Einride's implied covenant claim that is distinguishable from the basis underlying the contract claim.

## IV.  CUTSA SUPERSESSION

Lastly, Beluca argues that CUTSA supersedes Einride's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  Mot. at 9–12.  Beluca is partly right.  CUTSA does not supersede the breach of contract claim.  Regardless of whether the breach of the implied covenant of good faith and fair dealing claim is superseded, it is redundant of the contract claim and therefore dismissed.  The breach of fiduciary duty claim draws upon the same nucleus of facts as the trade secret claims and is superseded.

CUTSA provides "the exclusive civil remedy" for conduct "based upon misappropriation of a trade secret."  *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017).  "With the exception of contractual claims, CUTSA preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020) (internal quotation marks and quotation omitted); *see* Cal. Civ. Code § 3426.7.  CUTSA "supersed[es] 'claims based on alleged misappropriation of non-trade secret information' unless 'the plaintiff;s property right in the information at issue stems from some provision of positive law on grounds qualitatively different from grounds upon which trade secrets are considered property, or (2) allege wrongdoing materially distinct from the wrongdoing alleged in a CUTSA claim.'"  *Acorn Bay v. CamelBak Prod., LLC*, No. 20-cv-05214-WHA, 2020 WL 7664450, at *2 (N.D. Cal. Dec. 24, 2020) (quoting *Waymo*, 256 F. Supp. 3d at 1062)).  To

13

avoid supersession, Einride's claims must allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim. *See SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012) (describing test).

Einride's third claim for breach of the Consultancy Agreement is a breach of contract claim which falls squarely within CUTSA's carveout. "The plain language of CUTSA . . . provides that it does not preempt contractual remedies, whether or not based upon misappropriation of a trade secret." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017) (internal quotation marks and quotation omitted); *see also Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013), *as modified on denial of reh'g* (Nov. 7, 2013) ("[B]reach of contract claims, even when they are based on misappropriation or misuse of a trade secret, are not displaced by [C]UTSA."). Beluca's attempt to dismiss this claim on the basis of CUTSA supersession is **DENIED**.

Courts have split as to whether a claim based on a breach of the implied covenant of good faith and fair dealing sounds in contract or tort and is therefore superseded. *See Acorn Bay*, 2020 WL 7664450, at *2 (noting that "breach of the implied covenant may be viewed in either contract or tort"); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1240–41 (E.D. Cal. 2018) (finding that "a breach of the implied covenant is necessarily a breach of contract"); *Swarmify, Inc. v. Cloudflare, Inc.*, No. 17-cv-06957-WHA, 2018 WL 1609379, at *3 (N.D. Cal. Apr. 3, 2018) (describing debate whether or not a claim for breach of the implied covenant generally counts as a contractual remedy for purposes of CUTSA supersession). This issue is ultimately moot, though, because Einride's implied covenant claim has been dismissed as redundant. *See* Section III, *supra*.

Lastly, I turn to Einride's fifth claim for breach of fiduciary duty. I find that CUTSA supersedes the claim because—as currently pleaded—the breach of fiduciary duty claim arises out of the same nucleus of facts as Einride's trade secret claims.

"CUTSA doesn't preempt claims for breach of fiduciary duty unless the alleged breach is 'based on the same nucleus of facts as [the] trade secret misappropriation' claim." *CTC Glob. Corp. v. Huang*, No. 17-cv-02202, 2019 WL 4148184, at *7 (C.D. Cal. July 29, 2019) (quoting

14

*Integral Dev. Corp.*, 675 Fed. App'x at 704). Einride argues that this claim is based on a different nucleus of common fact because Einride has asserted that Beluca disclosed Einride's "confidential information" in addition to its "trade secrets." Opp. at 14 (citing FAAC ¶ 103). Einride also contends that Einride should be permitted to maintain this claim in the alternative to its trade secret claims because this claim would allow Einride to recover in the event that Einride's materials do not technically constitute trade secrets. Opp. at 14 n.8. But Einride's arguments are contrary to decisions by the California Court of Appeals and numerous district courts in this Circuit.

Over a decade ago, the California Court of Appeals in *Silvaco* addressed whether CUTSA superseded claims based on the misappropriation of non-trade secret proprietary information. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). *Silvaco* concluded that CUTSA superseded claims for conversion, common count, common law unfair business practices, and intentional and negligent misrepresentation because those claims were based on the misappropriation of trade secrets. *See* 184 Cal. App. at 236. "Although the California Supreme Court has not clearly defined the scope of CUTSA's supersession of claims arising from the alleged misappropriation of non-trade secret information, the majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 20-cv-06846-EJD, 2021 WL 3042616, at *3 (N.D. Cal. July 19, 2021) (internal quotation marks and quotation omitted); *see also Barker v. Insight Glob., LLC*, No. 16-cv-07186-BLF, 2017 WL 10504692, at *4 (N.D. Cal. Nov. 21, 2017) (noting that "the majority of district courts" have held that "CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA").

Under *Silvaco* and its progeny, CUTSA supersedes Einride's claim for breach of fiduciary duty because the claim as currently pleaded is exclusively based on Lagerling's alleged wrongful disclosure of "confidential information." Opp. at 14 (citing FAAC ¶ 103). Courts have found that

such claims are not alternative legal theories but rather "'a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else.'" *Elite Semiconductor*, 2021 WL 3042616, at *3 (quoting *Silvaco*, 184 Cal. App. 4th at 240); *see also Monolithic Power Sys., Inc. v. Dong*, No. 20-cv-06752-JSW, 2021 WL 4522291, at *6 (N.D. Cal. June 22, 2021) (dismissing fraud claim as superseded by CUTSA under *Silvaco*); *Swarmify*, 2018 WL 1609379, at *3 (dismissing implied covenant claim based on misuse of "confidential information" where plaintiff did not explain how the "confidential information" meaningfully distinguished between the "trade secrets"); *but see Integral Dev. Corp.*, 675 Fed. App'x at 704 (finding that breach of "confidential information" could provide an independent basis for a breach of fiduciary duty claim).

Moreover, Einride's allegations regarding "confidential information" lack factual specificity; it is impossible to determine whether and how such allegations differ from Einride's allegations related to the trade secrets. As in *Swarmify*, Einride has "repeatedly referred to 'confidential information'" without explaining "what that information actually includes or how it differs qualitatively" from the "broad swaths of information that [Einride] has claimed as 'trade secrets.'" *Swarmify*, 2018 WL 1609379, at *3. At least at this point, it appears that Einride's breach of fiduciary duty claim arises from the "same nucleus of facts" as the trade secret misappropriation claim and is thus superseded by CUTSA. I will **DISMISS** this claim with leave to amend so that Einride can more clearly plead the factual basis for its breach of fiduciary duty claim and how this claim differs from its trade secret claims.

## CONCLUSION

For the foregoing reasons, Beluca's motion to dismiss the first three claims in the FAAC is **DENIED**. The fourth and fifth claims are **DISMISSED** with leave to amend. Any amended complaint shall be filed within twenty days of the date of this order.

**IT IS SO ORDERED.**

Dated: March 10, 2023

William H. Orrick
United States District Judge